**John Paul JONES, Plaintiff-Appellant,**

v.

**TEXAS TECH UNIVERSITY, et al., Defendants-Appellees.**

**No. 79–3675.**

United States Court of Appeals, Fifth Circuit.

Unit A

Sept. 25, 1981.

Marvin Rogers, West Texas Legal Services, Stephen C. McIntyre, Lubbock, Tex., William L. Garrett, Fort Worth, Tex., for plaintiff-appellant.

Robert A. Doty, James H. Milam, Dr. Marilyn Phelan, General Counsel, Texas Tech University, Lubbock, Tex., Laura S. Martin, Lonny F. Zwiener, Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

Before AINSWORTH, CHARLES CLARK and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant John Paul Jones, a former Texas Tech University (University) student and campus activist, was charged by a University official with possession of marijuana at an April 1, 1978 campus demonstration, a violation of the University Code of Student Affairs. A University discipline committee found Jones guilty of the charged offense and recommended that he be placed on probation and restricted from leadership in any campus organization for one year. The recommended penalty was imposed after the committee's decision was upheld on appeal. On May 1, 1979, Jones filed this suit against the University and several of its officials under 42 U.S.C. § 1983, complaining that the procedures pursuant to which he was placed on probation and restricted from campus leadership activity violated his Fourteenth Amendment due process rights. The district court dismissed the suit as res judicata on the basis that Jones had waived

his due process claims in a valid, binding consent judgment in his prior suit involving the same defendants. Alternatively, the district court determined that Jones' due process rights had not been violated. Finally, the court awarded attorneys' fees to the defendants in the stipulated amount of $2,500.00 on the basis that Jones' suit was frivolous. After carefully reviewing the record, we affirm the district court's ruling that res judicata bars this lawsuit, but we reverse the attorneys' fees award against Jones.

## I. THE FACTS

### A. Disciplinary Proceedings

Appellant Jones is a former Texas Tech University student who played an active leadership role in a student organization, Concerned and Political Students (CAPS). On April 1, 1978, Jones participated in a campus demonstration sponsored by CAPS, the central purpose of which was to protest all anti-marijuana laws. At the demonstration, Moses Turner, the University's Dean of Student Life, observed Jones smoking a cigarette which Turner suspected was marijuana. Turner summoned Jones to his office on April 3, 1978, where Jones was furnished with written notice that the charge against him was possession of marijuana on April 1 in violation of the University's Code of Student Affairs. On April 7, University staff member George Scott conducted a taped interview with Jones concerning the April 1 incident. During the interview, Jones refused to answer questions with respect to his use or possession of marijuana at the demonstration without his attorney present. Scott informed Jones that he had a right to an adviser or attorney who could be present and advise him at any hearing but who could not participate as an advocate therein.

On April 13, 1978, a hearing was held before the University Discipline Committee (UDC), chaired by defendant Dr. Robert Marlett. Jones made no effort to contact a lawyer between April 7 and April 13, and he therefore appeared at the hearing without counsel. At the hearing, three items of evidence were introduced: the tape recording of the meeting with Scott; a one-paragraph memo from Dr. Turner stating that he had observed Jones in possession of marijuana on April 1; and an envelope containing a cigarette which appeared to contain marijuana. Jones was the sole live witness. He answered some of the committee's questions, but in response to other questions he pled the Fifth Amendment or refused to answer without a lawyer present. Although he was offered the opportunity to do so, Jones presented no evidence in his own behalf. On April 20, 1978, Jones was notified that the UDC had found him guilty of the charged offense and recommended that he be placed on probation and restricted from leadership in any campus organization. The probationary period was to remain in effect until May of 1979.

Jones was notified of his right to appeal the UDC's decision, and he filed a timely appeal with the three-member University Appeals Committee (UAC), chaired by defendant Dr. Robert Pinder. The evidence presented to the UDC was transferred to the UAC for review. Due to a tape recorder malfunction, no taped or written transcript of the UDC hearing was available to the UAC. After considering the notice of appeal filed by Jones and the evidence introduced at the UDC hearing, the UAC voted two-to-one to uphold the UDC's decision. One member of the committee, however, felt that "further clarification" was necessary before a proper result could be reached, so the committee requested additional information. Jones was not notified of the UAC's original vote.

Pursuant to requests for "further clarification" by the UAC, the committee was furnished with three additional documents: a letter from Mr. Scott stating the charge against Jones; a letter from Dr. Turner detailing the circumstances surrounding his observation of Jones' April 1 conduct; and a letter from Matt Matthews, a campus police officer, stating Matthews' professional opinion that the cigarette introduced into evidence before the UDC contained marijuana. On June 20, 1978, the UAC met to consider Jones' appeal for the second time. Since two of the original members of the committee were absent for the June 20 meeting, they were replaced by alternates;

Dr. Pinder was the only member of the UAC who participated in both votes. The reconstituted UAC unanimously affirmed the decision of the UDC.

Jones filed a timely appeal with Dr. Ewalt, Vice President of Student Affairs. On August 11, 1978, Dr. Ewalt notified Jones that he found no grounds for reversing the decision and penalty imposed, and placed Jones on probation.

### B. The First Lawsuit

During the summer of 1978, Jones, acting on behalf of CAPS under the designation of "non-leader," requested and received the University's permission to hold another on-campus demonstration on September 16, 1978 to protest government regulation of use and possession of marijuana. Dissatisfied with certain restrictions contained in the demonstration permit, Jones contacted and enlisted the aid of West Texas Legal Services in filing suit against the University. On September 14, 1978, Jones filed a complaint in federal district court against four University officials. The complaint alleged that the officials, acting under color of state law, had deprived Jones and other members of CAPS of their First and Fourteenth Amendment rights to freedom of speech and due process of law.

The complaint was accompanied by an affidavit signed by Jones detailing the factual allegations supporting the complaint; the complaint specifically incorporated the affidavit into the complaint. The affidavit described the circumstances surrounding the April 1 CAPS demonstration and Jones' dealings with the University concerning the planned September demonstration, noting the restrictions contained in the September demonstration permit. In addition, the affidavit contained an account of the disciplinary proceedings that led to Jones' probation and restriction from campus leadership. The complaint requested, inter alia, a declaratory judgment that the defendants' actions as described in Jones' affidavits were unconstitutional; a permanent injunction preventing the defendants from enforcing discriminatory policies and restrictions concerning campus demonstrations, and from interfering with and intimidating persons who sought to exercise their First Amendment rights; and a temporary restraining order allowing CAPS to hold the planned September demonstration free of the restrictions contained in the demonstration permit. In addition, the complaint asked the court to award Jones damages in the amount of $11,000.00 for the defendants' violation of his constitutional rights.

On September 15, 1978, the district court entered a consent judgment, signed by all attorneys involved in the proceeding, based upon an agreement between the parties. The court's order amended two paragraphs of the demonstration permit, and closed with the following notation:

> Upon further stipulation and agreement of the parties, this is a final order in this case. *The Plaintiff waives all other claims for relief.* Costs of court shall be paid by the party incurring the same.

(Emphasis added).

### C. The Second Lawsuit

On May 1, 1979, Jones filed the instant suit against the University and several of its officials under 42 U.S.C. §§ 1983, 1985, 1986, 1988 and the First, Fifth and Fourteenth Amendments to the United States Constitution. Jones alleged that the defendants had violated his right to due process at his disciplinary proceedings by, inter alia, preventing him from cross-examining his accusers; failing to notify him of the opportunity to present an adequate defense because of "secret" evidence and testimony; disciplining him on insufficient evidence; failing to provide him with written findings of fact concerning the factual basis of the disciplinary decision; and violating the rules and procedures of the Code of Student Affairs. He requested declaratory relief, injunctive relief, damages and attorneys' fees. After filing an initial answer to Jones' complaint, the defendants raised the affirmative defense of res judicata and filed a counterclaim for attorneys' fees under 42 U.S.C. § 1988. The defendants filed a pre-trial motion to dismiss, but the district court ordered the motion carried with the case and held a full trial on the merits.

## D. The District Court's Opinion

On September 19, 1979, the district court rendered judgment and entered its findings of fact and conclusions of law. First, it dismissed the suit with prejudice on the ground that the valid, binding consent judgment in the first suit under which Jones knowingly waived all claims for relief arising out of the actions complained of in the first suit, other than the relief granted in the consent judgment, barred as res judicata a second suit involving the same parties and the same cause of action. The court rejected Jones' argument that the requisite identity of parties was not present because he claimed the first suit was brought solely in his capacity as representative for CAPS. The court concluded that Jones brought the first suit in both his representative and individual capacities. In addition, the court refused to accept Jones' theory that the causes of action involved in the two suits were not the same, finding that the due process violations alleged in the second suit were raised in Jones' complaint in the first suit and were covered by his broad waiver of "all other claims for relief" in the settlement of that suit. The court accordingly dismissed the suit with prejudice.

The court went on, however, to consider Jones' allegations of due process violations on the merits. Analyzing Jones' allegations under the standards set out in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); and *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961) governing student suspensions and expulsions, it found that the minimum requirements of due process had been fulfilled and that Jones' rights had not been violated. Finally, finding the suit frivolous, the district court awarded the defendants attorneys' fees in the stipulated amount of $2,500.00.

## II. THE MERITS

On appeal, Jones attacks all three findings of the district court, contending that the court erred in finding that the suit was barred by res judicata, holding that his due process rights were not violated in the disciplinary proceedings, and assessing attorneys' fees against him. For the reasons stated below, we affirm the judgment of the district court that the consent judgment in the first suit bars the instant suit under the doctrine of res judicata. Accordingly, we need not consider the merits of Jones' due process claims. Nevertheless, we reverse the attorneys' fee award against Jones, finding that the district court was in error in finding Jones' lawsuit frivolous.

## A. Res Judicata

■ Our cases set out the prerequisites for application of the doctrine of res judicata:[1]

> For a prior judgment to bar a subsequent action, it is firmly established (1) that the prior judgment must have been rendered by a court of competent jurisdiction; (2) that there must have been a final judgment on the merits; (3) that the parties, or those in privity with them, must be identical in both suits; and (4) that the same cause of action must be involved in both suits. *Wasoff v. American Automobile Ins. Co.*, 451 F.2d 767 (5th Cir. 1971). If these elements are established, then the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented.

*Stevenson v. International Paper Co.*, 516 F.2d 103, 108–09 (5th Cir. 1975). *See also Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Gregory v. Mitchell*, 634 F.2d 205, 206 (5th Cir. 1981); *Kemp v.*

---

1. In this opinion, we use the term res judicata to refer to claim preclusion as opposed to collateral estoppel (or issue preclusion). *See Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc.*, 575 F.2d 530 (5th Cir. 1978) (discussing the distinctions between the doctrines of res judicata and collateral estoppel). Because we hold that res judicata bars the instant suit, we need not determine what collateral estoppel effect, if any, should be given to the consent decree in the first suit. *See generally id.* at 537–39.

*Birmingham News Co.*, 608 F.2d 1049 (5th Cir. 1979); *Blanchard v. St. Paul Fire & Marine Ins. Co.*, 341 F.2d 351 (5th Cir. 1965), *cert. denied*, 382 U.S. 829, 86 S.Ct. 66, 15 L.Ed.2d 73 (1965).

■ Jones contends that the district court erred in ruling that the judgment in his first suit bars the instant suit under the doctrine of res judicata.[2] He admits that the first two requirements for invocation of the doctrine were fulfilled by the consent judgment in the first suit, conceding that the consent judgment should not be given res judicata effect because the other two requirements—identity of causes of action and identity of parties—are not present. We consider each of these arguments separately.

### 1. Identity of Causes of Action

The district court found that the allegations of procedural due process violations in Jones' disciplinary proceedings raised in Jones' second suit were substantially the same as those alleged in the first suit. This meant that Jones' waiver of "all other claims for relief" extended to all of the allegations of his complaint in the first suit, including the procedural due process claims. Accordingly, the court determined that the second suit involved the same cause of action as the first.

Jones recognizes that if his cause of action in the first suit included the factual allegations of due process violations contained in his affidavit, the causes of action in the two suits would, beyond question, be the same. Jones' argument is that the factual allegations of the affidavit which detailed the circumstances surrounding his disciplinary proceedings did not raise a cause of action based on procedural due process violations but, rather, were merely inserted in the affidavit for the purpose of providing factual support for the First Amendment claims concerning the planned September demonstration. Jones contends that one of the restrictions contained in the September demonstration permit was a requirement that Jones provide the names of five CAPS members to serve as monitors for the demonstration. According to Jones, CAPS members were fearful that if their names were revealed, they would be subject to intimidation and reprisals by the University. He argues that the details of his dealings with the University were supplied to the court solely for the purpose of making a case under *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). If this case controlled it would mean that it was unconstitutional, because of legitimate fears of intimidation and retaliation, to require disclosure of the names of CAPS members as a precondition for granting the demonstration permit. Thus, Jones claims that the allegations of his affidavit detailing the circumstances of his disciplinary proceedings did not constitute the assertion of a separate claim of due process violations in his disciplinary proceedings.

After reviewing the complaint and affidavit from the first suit, we are convinced that the district court properly determined that the first suit raised a cause of action based on alleged due process violations in Jones' disciplinary proceedings. Several considerations support our conclusion. First, the alleged irregularities in the disciplinary proceedings pointed out in the affidavit are, for the most part, precisely the same as those complained of in the second suit. Second, the complaint in the first suit

---

2. The principles of res judicata come into play in this case because Jones' waiver of "all other claims for relief" in the first suit was embodied in a consent judgment, which was a binding court order. *See Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc.*, 575 F.2d 530, 537–38 (5th Cir. 1978). Because the waiver was part of a court order, and because we hold that all of the prerequisites for application of res judicata have been fulfilled in this case, we need not consider whether the same waiver, if executed merely as an extrajudicial settlement or compromise, would have been enforceable as a contract between the parties to the first suit. We note, however, that "[w]hen fairly arrived at and properly entered into, [settlement agreements] are generally viewed as binding, final, and as conclusive of rights as a judgment." *Thomas v. Louisiana*, 534 F.2d 613, 615 (5th Cir. 1976). *See also Strozier v. General Motors Corp.*, 635 F.2d 424 (5th Cir. 1981); *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir. 1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976); *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967).

specifically alleges a violation of Jones' personal Fourteenth Amendment due process rights. Although it is arguable that this due process claim referred merely to the allegedly unconstitutional restrictions contained in the demonstration permit, the district court properly concluded that the complaint's specific reference to violations of Jones' personal due process rights was intended to encompass the affidavit's allegations of irregularities in the disciplinary proceedings. Finally, the complaint in the first case requested that the court award Jones damages of $11,000 for the defendants' violation of his personal constitutional rights. Counsel for Jones admitted at oral argument that the $11,000 in damages was to be awarded to Jones personally and not to CAPS. Counsel asserted that the requested amount of damages was intended only to compensate Jones for the restrictions placed on the September demonstration permit by the University and not to compensate him for procedural due process violations at his disciplinary proceedings.

In light of the fact that the first suit requested damages for Jones but not for CAPS, we think that the record clearly supports the district court's conclusion that Jones was pursuing a claim in addition to the one he was pressing for CAPS, a personal claim for due process violations in his disciplinary proceedings. Under the circumstances, we hold that the district court properly found that the suit raised a cause of action based on alleged due process violations in Jones' disciplinary proceedings which were substantially the same as those raised in the second suit. It follows that the waiver of "all other claims for relief" necessarily extended to Jones' personal due process claim.

### 2. Identity of Parties

Jones also contends that the doctrine of res judicata does not bar the instant suit because the parties in the first and second suits were not the same. Jones' argument flows from the general "rule of differing capacities," which provides that "a person who is a party to a suit solely in a representative capacity is not concluded by the judgment when, in a later action, he appears in his individual capacity or as a representative of a different interest." 1B J. Moore Federal Practice ¶ 0.411[1], at 1253 (2d ed. 1976). Jones asserts that the consent judgment in the first suit does not bind him because he appeared in the first suit solely in his capacity as representative for CAPS and not in his individual capacity. He disputes the district court's finding that he filed the first suit in both his capacity as representative of CAPS and his individual capacity. In our view, the district court's determination was correct.

As the district court noted, the caption of the complaint in the first suit identified John Paul Jones as the plaintiff. Although the general rule is that the caption of a complaint is not necessarily determinative with respect to whether the plaintiff is acting in a representative capacity, *see generally* 1B J. Moore Federal Practice ¶ 0.411[3], at 1424 (2d ed. 1976), the district judge properly considered the caption's designation of Jones as the sole plaintiff in the suit as one factor to be taken into account. Jones correctly points out that the complaint referred in several instances to his capacity as representative for CAPS, but we think it was reasonable for the district court to conclude that Jones was acting in a representative capacity for CAPS solely for purposes of the First Amendment claims involving the September demonstration permit. As the district court noted, the most telling evidence that Jones sued in his individual capacity as well as a representative for CAPS was that the complaint alleged violations of Jones' personal due process rights and requested damages to be paid to him personally. In sum, the district court's finding that Jones brought the first suit both in his individual and representative capacities is amply supported by the record.[3]

---

**3.** In his brief on appeal, Jones also argues that the requisite identity of the parties was lacking because the defendants were not the same in the two suits. This is true, according to Jones, because he sued the defendants solely in their official capacities in the first suit but sued them in both their official and individual capacities in the second suit. Jones thus asserts that res judicata does not bar a second suit against the defendants as individuals.

Because we have disposed of the arguments against the application of res judicata in this case, we affirm the district court's ultimate conclusion that the consent judgment in the first suit embodying Jones' waiver of "all other claims for relief" bars the instant suit. Having once asserted a cause of action based on procedural due process violations involving his disciplinary proceedings, and having waived all claims for relief other than the relief ordered in the consent judgment in the first suit, Jones cannot now maintain this action based on substantially identical allegations of procedural due process violations. Jones had full opportunity to pursue his due process claims, and he settled them clearly and completely in an agreed judgment in court. Because res judicata is an absolute bar to this suit, we have no occasion to review the district court's finding on the merits of Jones' due process claims.

Our examination of the record reveals that Jones has raised this argument for the first time on appeal. With certain exceptions, we do not consider issues raised for the first time on appeal. *See Budge v. Post*, 643 F.2d 372, 375 (5th Cir. 1981); *Matter of Novack*, 639 F.2d 1274, 1276–77 (5th Cir. 1981); *Martin Oil Co. v. Gulf Insurance Co.*, 605 F.2d 197, 199 (5th Cir. 1979). As none of the exceptions to the general rule apply in this case, we do not rule on Jones' contention.

It would be a disservice to the district court and to the total evaluation of this case, however, if we did not record our view that Jones' argument has little merit, at least under the facts of this case. First, Jones' assertion that he sued the University officials solely in their official capacities in the first suit is questionable. The caption of the complaint in the first suit is the only record evidence of the capacity in which the defendants were sued in the first action. But the caption's meaning is ambiguous, for it merely lists the name of each defendant followed by his or her University job title; it simply does not specify in what capacity the defendants were sued. Under these circumstances, we would be most reluctant to conclude that the individual liability of the defendants was not at stake in the first action.

Second, Jones' assertion is a novel application of the law concerning the role of differing capacities in the context of res judicata. Our research reveals that the general rule of differing capacities—that a judgment for or against a person in one suit is no bar to a second suit by or against the same person appearing in a different capacity—has never been applied in

### B. Attorneys' Fees

■ The remaining issue in this case is the propriety of the district court's award of attorneys' fees under 42 U.S.C. § 1988 against Jones in the stipulated amount of $2500.00 based upon its finding that the suit was frivolous. Jones challenges both the finding that the suit was frivolous and the amount of attorneys' fees awarded. As to the amount of the fee, he urges the district court erred by basing the amount of the award on the stipulation between the parties without considering the *Johnson*[4] criteria and by failing to consider whether, in light of Jones' limited financial resources, a smaller award would have fulfilled § 1988's purpose of deterring frivolous suits.[5] For the reasons stated below, we conclude that the district court erred in finding that the suit was frivolous, and we therefore reverse the attorneys' fee award. Our disposition of this issue renders unnecessary discussion

the context of a § 1983 suit against a public official.

Third, we have grave doubts about the wisdom of extending the general rule of differing capacities to encompass § 1983 suits against public officials. In our view, a rule that would view a public official sued in his individual capacity as a different party for res judicata purposes than the same public official sued in his official capacity has little to commend it in terms of the concerns for finality and certainty that underlie the doctrine of res judicata. Moreover, we are skeptical as to whether the reasons favoring the general rule of differing capacities support the rule's extension to civil rights suits against public officials. *See generally* 1B J. Moore Federal Practice ¶ 0.411[3] (2d ed. 1976) (discussing considerations favoring the general rule).

In any event, we think that application of the rule argued for by Jones is inappropriate where, as here, the plaintiff's intent to sue a public official solely in his official capacity does not clearly appear in the complaint or other portions of the record of the first suit.

4. *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).

5. Jones was granted in forma pauperis status by the district court on the day he filed his complaint. Pursuant to F.R.A.P. 24(a), the district court's original grant of permission to proceed in forma pauperis allowed Jones to retain this status for purposes of appeal.

of Jones' arguments concerning the amount of the fees awarded.

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court held that the defendant in an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, may recover attorneys' fees from the plaintiff only if the court finds "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700. The Supreme Court has recently ruled that the *Christiansburg* standard also governs fee awards to prevailing defendants under 42 U.S.C. § 1988. *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). *See also Lopez v. Aransas County Independent School District*, 570 F.2d 541, 545 (5th Cir. 1978) (correctly concluding, prior to *Hughes*, that the *Christiansburg* standard is applicable to fee awards under § 1988).

The district court's award of attorneys' fees to the defendants in this case appears on the surface to be in conformity with the *Christiansburg* standard because it is based upon the court's finding that Jones' lawsuit was frivolous. However, an examination of the district court's reasons for characterizing the suit as frivolous reveal that the court did not adequately apply the *Christiansburg* standard to the facts of this case.

In its findings of fact, the district court set out two primary reasons for its finding that Jones' lawsuit was frivolous. First, with respect to Jones' claim that the suit was not barred by res judicata, the district court found that Jones or his counsel knew prior to trial that:

A previous lawsuit filed by plaintiff Jones contained factual allegations concerning the same incidents which are the subject of this lawsuit. A Memorandum Order, entered by this court and approved by plaintiff's counsel, contains a waiver of all claims alleged in that cause of action, excepting those adjudicated in the Order itself.

Second, with respect to Jones' due process claim the court found that Jones or his counsel knew prior to trial that:

[Jones] was given the procedural rights enumerated in the Code of Student affairs, i. e.:

1) Notice of Charges,
2) Explanation of potential penalties,
3) Explanation of right of appeal and procedures,
4) Right to adviser during hearing,
5) Access to evidence to be used at hearing,
6) Time to prepare defense, and
7) Opportunity to offer any evidence or other information.

These findings are not sufficient to support the court's conclusion that Jones' suit was frivolous within the meaning of *Christiansburg*. In *Christiansburg*, the Court specifically warned district courts to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." 434 U.S. at 421–22, 98 S.Ct. at 700. Last year in *Hughes v. Roe*, 449 U.S. 5, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980), the Supreme Court reaffirmed the principle that "[t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." According to the Court, in order to meet the *Christiansburg* test, "[t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation." *Id.* Thus, *Christiansburg* and *Hughes* make it clear that in determining whether a plaintiff's action is frivolous or meritless, a district court *must* focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.

In this case the district court's findings focused upon the ultimate merit of Jones' arguments that his suit was not barred by the doctrine of res judicata and his underlying due process claim. There is no indication in the court's findings of fact or elsewhere in the record that the court made the

inquiry required under *Christiansburg* —whether Jones' claim was void of arguable legal merit or factual support. Because the court's findings appear to be no more than reiteration of its ultimate conclusions on the merits of Jones' claim and because the record does not indicate that the court conducted the inquiry mandated by *Christiansburg* and *Hughes*, the court's findings of fact fall short of supporting its legal conclusion that Jones' lawsuit was frivolous.[6]

The question remains whether Jones' lawsuit was frivolous under a proper application of the *Christiansburg* standard. We conclude that as a matter of law Jones' case, while weak, was not so devoid of arguable legal merit or factual support as to be frivolous within the meaning of *Christiansburg*. First, the careful consideration given to the case by the district court is some indication that the suit was not frivolous. It is important to note that the court did not dismiss the case prior to trial on the basis of the threshold issue of res judicata; rather, it held a full-blown trial on the merits of Jones' underlying claims of due process violations in his disciplinary proceedings. Nor does the district court indicate that it regarded Jones' arguments on the res judicata and due process issues to be legally barren or factually insubstantial. Rather, the opinion, which is twelve typewritten pages long, reveals that the court, while ultimately rejecting each of Jones' arguments, gave them thorough and serious consideration. As the Supreme Court recently noted in *Hughes*, the fact that a plaintiff's claim received careful consideration by the district court may properly be taken into account in determining whether the claim was frivolous. 101 S.Ct. at 179.

The second and most important reason supporting our conclusion that Jones' lawsuit was not frivolous is that Jones proffered at least two contentions of some arguable merit, one concerning res judicata—that his second lawsuit did not involve the same cause of action as the first—and one concerning his underlying due process claim—that the UAC violated his due process rights by seeking and considering, without his knowledge, evidence in addition to that presented at his original hearing. As we noted above, Jones' contention that the two lawsuits did not involve the same cause of action rested on his argument that his affidavit's description of the circumstances of his disciplinary proceedings was included for the purpose of showing that other CAPS members would be harassed if their names were revealed to the University and not for purposes of establishing a cause of action based upon due process violations in his disciplinary proceedings. After carefully reviewing Jones' affidavit and his complaint in the first suit, we think that while the district court acted correctly in rejecting Jones' explanation of the presence of the description of his disciplinary proceedings in the affidavit, Jones' version of the reasons those details were included in the affidavit is not entirely unreasonable or implausible.

We also think that Jones raised at least one issue of arguable merit with respect to his underlying claim of due process violations. Jones asserted that the UAC violated his due process rights by seeking and considering, without his knowledge, damaging evidence in addition to that presented at his original hearing before the UDC. The district court rejected this claim on the basis that the UAC's original two-to-one vote against Jones prior to the receipt of the additional evidence "was the decision of the committee and that it was only because of one member's desire to lean over back-

---

**6.** In the fact findings supporting its conclusion that Jones' suit was frivolous, the district court also noted that Jones' probationary period had ended prior to trial and that he had never been suspended from classes at the University. Neither of these findings supports a finding that Jones' suit was frivolous. Even if the termination of Jones' probation rendered his claim for injunctive relief moot, his claim for damages was enough to keep the case alive. *See, e. g.,*

*H. K. Porter Co. v. Metropolitan Dade County,* 650 F.2d 778, at 782 (5th Cir. 1981). And even if, as claimed by the defendants, the act of placing a student on probation does not rise to the level of a denial of the student's Fourteenth Amendment liberty interest, the additional requirement of Jones' probation restricting him from campus leadership activity clearly implicated his liberty interest in free speech and association.

wards to be fair that the additional clarification was requested." The court, however, recognized that the committee had in fact taken additional evidence which Jones did not have the opportunity to controvert, and that the situation raised "a possible denial of constitutional due process."

At trial and on appeal, Jones maintains that it is the UAC's second vote, which occurred after the receipt of the "secret" evidence, and not the original two-to-one vote that must be considered in determining whether a due process violation occurred. Jones emphasizes that the committee did not inform him of its original vote, that it met a second time with new members, and that it was only upon the basis of the second vote that the UDC's decision was formally affirmed. Although the district court may have been correct in concluding that the original vote of the UAC was binding and that the committee was merely attempting to be fair to Jones, we think that Jones' argument had at least some arguable merit. In the absence of squarely controlling precedent, we cannot say that Jones' contention that the UAC violated his right to due process was frivolous, assuming res judicata did not control.

Because Jones' case, although not ultimately successful, had some arguable merit, the district court's finding that the suit was frivolous cannot stand. It follows that the district court's judgment awarding attorneys' fees against Jones should be reversed.

The portion of the judgment granting the defendants' motion to dismiss is AFFIRMED. The portion of the judgment awarding attorneys' fees against the plaintiff is REVERSED.