**Nelson Bunker HUNT, Plaintiff,**

v.

**BP EXPLORATION COMPANY (LIBYA) LTD., Defendant.**

**Civ. A. No. CA3–75–0715–G.**

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 23, 1984.

Ivan Irwin, Jr., A.B. Conant, Jr., Shank, Irwin, Conant, Williamson & Grevelle, Dallas, Tex., for plaintiff.

Mark Martin, Patrick F. McGowan, James K. Peden, Strasburger & Price, Dallas, Tex., Robert MacCrate, James H. Carter, Jr., D. Stuart Meiklejohn, Sullivan & Cromwell, New York City, for defendant.

## MEMORANDUM OPINION

FISH, District Judge.

Nelson Bunker Hunt ("Hunt"), the plaintiff in this diversity case, asks this court to declare that a prior English judgment adjudicating the same dispute between these parties is unenforceable, to declare further that he is not indebted to defendant BP Exploration Company (Libya) Ltd. ("BP"), and to order that BP repay him the amount it previously collected under the English judgment ($40,833,000.00 plus interest). Alternatively, Hunt seeks a declaration that, in accordance with the parties' agreement, the dispute is subject to arbitration.

In a prior opinion, this court held "that the English judgment is entitled to recognition and that such recognition would bar most if not all of Hunt's claims in this litigation," but that summary judgment could not be granted BP until exhaustion of all appeals determined the scope of the bar. *Hunt v. BP Exploration Co. (Libya) Ltd.*, 492 F.Supp. 885, 888 (N.D.Tex.1980) ("*Hunt I*"). The facts and procedural history of the case are set out in that opinion and need not be repeated here.

### BP's Renewed Motion for Summary Judgment

BP renews its motion for summary judgment, stayed by the court's earlier opinion,

on grounds that the English judgment, which was not modified by the appellate courts in any respect, has become final (i.e., all appeals have been exhausted)[1]; that the English judgment is entitled to recognition here; and that such recognition bars all of Hunt's claims in this case. Hunt does not dispute the finality of the English judgment. He argues instead that the question of recognition is governed by the Texas Uniform Foreign Country Money-Judgment Recognition Act, Art. 2328b–6, TEX.REV. CIV.STAT.ANN. (Vernon Supp.1982) (the "Texas Act") and that BP has failed to conclusively establish, on its motion for summary judgment, that all conditions of that statute have been satisfied.

Hunt's response to BP's renewed motion for summary judgment presents only two issues not previously determined by this court: the question of reciprocity, i.e., whether England grants recognition to American judgments, and whether the parties agreed to arbitrate, rather than litigate, their differences. These issues arise under Sections 5(b)(7) and 5(b)(5), respectively, of the Texas Act, the terms of which are set forth below.[2]

The summary judgment record reveals no disputed material fact involved in the determination of these issues. Summary judgment is appropriate where the only issues to be decided are questions of law. *See Central Oil & Supply Corp. v. United*

*States,* 557 F.2d 511, 515 (5th Cir.1977); Wright & Miller, Federal Practice & Procedure § 2725 at 79.

### *Reciprocity*

Both parties agree that this court, sitting in diversity, must apply the law of Texas, including its choice of law rules. *See Hunt I,* above, at 892. At the time of *Hunt I,* that is, before the Texas Act was adopted, "the law in Texas as to reciprocity [was] not clear." *Hunt I* at 899. Due to this lack of clarity, the court attempted to chart the future course of Texas law regarding reciprocity as a condition of recognizing foreign judgments:

> Not having plainly committed themselves in the past, the court is of the opinion that Texas courts will not hereafter adopt this oft-criticized concept.

*Hunt I* at 899. In support of this conclusion, the court noted the difficulties involved in applying reciprocity, and the institutional limitations on judicial determination of foreign law, as well as the general trend in the federal courts against requiring reciprocity.

Notwithstanding these considerations and the court's view of the direction of Texas law, the Texas legislature later chose to include lack of reciprocity as a ground for not giving conclusive effect to a foreign judgment.[3] *See* the Texas Act, § 5(b)(7).

---

**1.** The English judgment, styled *BP Exploration Co. (Libya) Ltd. v. Hunt,* was entered by Mr. Justice Robert J. Goff of the High Court of Justice, Queen's Bench Division, Commercial Court, Cause 1975 B No. 4490 on June 30, 1978 (first part) and on March 26, 1979 (second part). A three-judge panel of the Court of Appeal affirmed Judge Goff's 62-page opinion on July 16, 1980. Although the appellate panel denied Hunt leave to appeal to the House of Lords, the Appeal Committee of the House of Lords consented to hear Hunt's appeal on condition that Hunt provide security in the amount of the judgment. Hunt did so by supplying a letter of credit. A five-member panel of the House of Lords heard oral argument for four days, ultimately affirming the decision of the trial court on February 4, 1982. BP Libya promptly drew on the letter of credit and asserts no further claim against Hunt.

After the Appeal Committee of the House of Lords affirmed the decision of the trial court, Hunt filed an application with the European Commission of Human Rights based on alleged violations of international law as embodied in the Convention for the Protection of Human Rights and Fundamental Freedoms signed at Rome on November 4, 1950. After its sitting on July 4, 1983, the 14-member Commission declared Hunt's application inadmissible.

**2.** See Footnote 7.

**3.** Of the twelve states to have enacted the Uniform Foreign Money-Judgments Recognition Act, only two, Massachusetts and Texas, have included lack of reciprocity as a ground upon which the court may refuse to give conclusive effect to a foreign judgment. *See* BP's renewed motion for summary judgment at 17. *See also* R. von Mehren and M. Patterson, Recognition

Although the Texas Act does not apply to "a judgment rendered before the effective date of this Act," and the English judgment was rendered prior to that date, the Fifth Circuit has indicated that

> While it is true that the Act specifically states that it will not apply to judgments entered before its passage, we think that the Texas courts would nevertheless apply to the present case those provisions in the Act that incorporate the doctrine of reciprocity .... [Since] the issue of reciprocity had never been squarely addressed in recent years by the Texas judiciary, a Texas court in our position would look to the new statute in the interests of uniformity ... [rather than] carving out a new and different rule for an arbitrary set of cases.

*Royal Bank of Canada v. Trentham Corp.*, 665 F.2d 515, 517–18 (5th Cir.1981). The Texas legislature thus declared invalid, retrospectively, *Hunt I's* conclusion that the question of reciprocity need not be decided.[4] This court must therefore apply the Texas Act, which includes a reciprocity requirement, in deciding the question of recognition.

The Texas Act provides that a foreign country judgment,[5] conclusive where rendered, is conclusive in Texas between the parties to the extent that it grants or denies recovery of a sum of money, and that it "is enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit." *See* Sections 3 and 4. The only barriers to recognition appear in Section 5, entitled "Grounds for nonrecognition," which lists certain exceptions to the recognition of foreign money judgments. While Section 5(a)[6] employs mandatory language ("A foreign country judgment *is not* conclusive if ..."), Section 5(b)[7] speaks in discretionary terms ("A foreign country judgment *need not be* recognized if ...") [emphasis added].

Although Section 5(b) of the statute calls for an exercise of discretion, this court must proceed cautiously in the absence of criteria for guidance fashioned by the Texas courts. *Trentham, supra*, 665 F.2d at 519. With only the words of the subsection as guideposts, it appears that the legislature placed the burden of proof on the party opposing recognition of a foreign money judgment:

---

and Enforcement of Foreign Country Judgments in the United States, 6 L. & Pol'y in Int'l Bus. 37 (1974).

4. The new statute accords, however, with *Hunt I's* previous determination that reciprocity is not an "essential element of recognition," for it is listed as one of the discretionary factors. *See* the Texas Act, § 5(b)(7).

5. The definitional section excludes those judgments rendered for taxes, fines or penalties and those rendered for support in matrimonial or family matters. Texas Act, § 2(2). In *Hunt I*, at 899, this court determined that application of the "Frustrated Contracts Act" to the facts of this case did not constitute a statutory penalty.

6. Section 5(a) reads as follows: "A foreign country judgment is not conclusive if:
(1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
(2) the foreign country court did not have personal jurisdiction over the defendant; or
(3) the foreign country court did not have jurisdiction over the subject matter."

7. Section 5(b) reads as follows: "A foreign country judgment need not be recognized if:
(1) the defendant in the proceedings in the foreign country court did not receive notice of the proceedings in sufficient time to enable him to defend;
(2) the judgment was obtained by fraud;
(3) the cause of action on which the judgment is based is repugnant to the public policy of this state;
(4) the judgment conflicts with another final and conclusive judgment;
(5) the proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;
(6) in the case of jurisdiction based only on personal service, the foreign country court was a seriously inconvenient forum for the trial of the action; or
(7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in Texas, conform to the definition of 'foreign country judgment' in Section 2(2) of this Act."

Sec. 5(b) A foreign country judgment need not be recognized if:

\* \* \* \* \* \*

(7) *it is established* that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state ... [emphasis added].

This allocation of the burden of proof harmonizes with the purpose of the Act, to recognize, with limited exceptions, foreign country money judgments. *See* the Texas Act, § 4. In effect, it codifies the leading decision regarding recognition and enforcement of foreign country judgments, *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). There the Supreme Court held that a judgment of a foreign country constituted *prima facie* evidence of the matters which had already been adjudicated. *See also Gull v. Constam*, 105 F.Supp. 107 (D.Colo.1952) (party who seeks to avoid burden of foreign judgment must plead absence of reciprocity as a matter of defense). Given the language of the Supreme Court describing a foreign judgment as *"prima facie* evidence," and the wording of Section 5(b)(7) of the Texas Act, Hunt had the burden to establish lack of reciprocity as a ground for non-recognition.

BP did not wait, however, for Hunt to establish lack of reciprocity. Instead, it presented the consularized affidavit of Robert Alexander MacCrindle, currently based in Paris as European Counsel to the New York firm of Shearman & Sterling. A member of the Bar of England, Wales and Hong Kong, Mr. MacCrindle practiced law as barrister in London for 24 years. He has specialized in commercial and corporate law.[8] Faced with the question whether England does or does not recognize Texas money judgments, MacCrindle stated:

[T]here can in my view be only one answer. It does. There are countless examples of an English Court recognizing as conclusive a final money judgment rendered on the merits in a country outside England, even where the legal system prevailing in that country has nothing like the affinity with English law which is found in the common law of Texas. The reported decisions show that the English Court will do this even, on occasion, where it believes the foreign judgment to have been palpably erroneous .... [F]oreign judgments granting a sum of money are daily enforced in England. The English courts have no prejudice against judgments rendered in Texas. Texas money judgments are at least as effective in this regard as judgments from any state outside England.

Affidavit of MacCrindle filed July 23, 1982 at 4 and 5.

According to MacCrindle, there are only three grounds upon which an English court would refuse recognition to a Texas judgment: (1) lack of personal jurisdiction, (2) procurement by fraud and (3) recognition being contrary to public policy. Affidavit, *supra*, at 5. None of these grounds are presently relevant to the determination of reciprocity, since the court has previously rejected claims based on the first and third; Hunt has never urged the second.

MacCrindle explains that a foreign money judgment, under English common law, affords the successful defendant the defense of *res judicata*, barring relitigation of the same claim, as well as the defense of collateral estoppel as to certain issues, facts or rights. Most important of all, MacCrindle states that the foreign money judgment will be recognized between the parties as conclusive evidence, rather than merely *prima facie* evidence, justifying a summary judgment of the English court to the same effect. Affidavit, *supra*, at 11.[9]

---

**8.** In addition, Mr. MacCrindle has appeared as counsel before appellate courts in several countries. He holds the title of Queen's Counsel and Master of the Bench of Gray's Inn, London.

**9.** In this respect, the courts of England are apparently unfettered by the limitation imposed on Texas courts, as well as federal courts applying Texas law, that the court consider whether it has been established that the foreign country would recognize a Texas judgment. *See* the Texas Act, § 5(b)(7).

■ By contrast, Hunt has submitted neither affidavits from English counsel nor any decisions from English courts refusing recognition of a Texas judgment.[10] Moreover, he has failed to dispute the MacCrindle affidavit. Under these circumstances, Hunt has failed both to rebut the *prima facie* case presented by BP and to carry the burden of establishing non-reciprocity imposed on him by Section 5(b)(7) of the Texas Act.

### Arbitration

The only remaining roadblock to recognition of the English judgment is Hunt's new contention that the parties to the contract agreed to submit any disputes to arbitration rather than resolving them in court. Hunt's argument is apparently based on the discretionary portion of the Texas Act, which provides that a foreign country judgment need not be recognized if "the proceeding in the foreign country was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court." [11] Texas Act, § 5(b)(5).

Hunt's claim that this dispute should be arbitrated derives from paragraph 29 of the 1960 Operating Agreement attached to the farm-in agreement between the parties. It provides as follows:

If any dispute arises between the parties hereto that cannot be satisfactorily settled by mutual agreement relating to anything herein contained or in connection herewith, and if either party hereto desires to submit such dispute to arbitration, it shall notify the other party in writing and name the party selected by it as an arbitrator.

■ This provision is clearly optional rather than mandatory; consequently, the proceeding in the English court was not contrary to an agreement between the parties that the dispute would be settled in another manner. *See* the Texas Act, § 5(b)(5). Each party remained free to institute court proceedings, and each chose to do so, BP in London and Hunt in Dallas. Hunt has not controverted BP's assertion that Hunt failed to give the written notice required by paragraph 29.[12] Neither has Hunt named the party selected by him as arbitrator. By engaging strenuously in the judicial resolution of this dispute over a seven-year period, during which Hunt failed to initiate arbitration or advance the arbitration clause as a defense, Hunt waived any right he may have had to arbitration. *See E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas,* 551 F.2d 1026, 1040–41 (5th Cir.1977), *on reh.,* 559 F.2d 268, *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978).

**10.** Hunt does claim that "BP's parent company is controlled by the British Government, and it is the policy of that Government not to recognize Texas judgments" (Memorandum of plaintiff in opposition to defendant's renewed motion for summary judgment at 33), a contention which BP hotly disputes. The court concludes that determination of the first part of this allegation (control of BP by the British Government) is unnecessary, for at issue is recognition of Texas judgments by English courts rather than a policy of the English government.

Hunt also claims that the resistance of the English government to pretrial discovery in England regarding possible violation there of American antitrust laws demonstrates that English courts do not recognize Texas judgments. No case law supports this conclusion. A refusal to enforce pretrial discovery measures in antitrust cases is not the equivalent of a refusal to recognize a judgment.

**11.** Hunt himself acknowledges that "This provision is separate from the mandatory provisions ...." Memorandum of plaintiff in opposition to defendant's renewed motion for summary judgment at 38.

**12.** Hunt seeks to excuse this tardiness by asserting that, since BP took the position in the English action that the contract had been brought to an end by frustration, Hunt's "entitlement to invoke his right to arbitration in such circumstances was certainly less than clear." Memorandum of plaintiff in opposition at 39. Although few litigants can be confident of success on any given claim, the principle of *res judicata* encourages timely presentation, for it bars in a second action all issues which could have been litigated in the original action. *See Johnson v. United States,* 576 F.2d 606, 611 (5th Cir.1978), *appeal after remand,* 631 F.2d 34 (1980), *reh'g denied,* 636 F.2d 314, *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

## Extent of Preclusion

In both this opinion and *Hunt I*, the court has carefully considered and rejected all those grounds for non-recognition of the English judgment advanced by Hunt. The conclusion follows inescapably that that judgment is conclusive between the parties insofar as it granted BP recovery of the sum of money at issue here. Under Texas law, therefore, the English judgment is enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit. *See* the Texas Act, § 4.

Yet to be considered are the dimensions of the zone of preclusion, which the court's previous decision declined to delineate. *Hunt I*, at 891. This case must be compared to the English suit to determine whether all the prerequisites for application of the doctrine of *res judicata* have been fulfilled:

> For a prior judgment to bar a subsequent action, it is firmly established (1) that the prior judgment must have been rendered by a court of competent jurisdiction; (2) that there must have been a final judgment on the merits; (3) that the parties, or those in privity with them, must be identical in both suits; and (4) that the same cause of action must be involved in both suits.

*Jones v. Texas Tech University*, 656 F.2d 1137, 1141 (5th Cir.1981), quoting from *Stevenson v. International Paper Co.*, 516 F.2d 103, 108–09 (5th Cir.1975).

In *Hunt I*, at 896–98, this court concluded that the English court had both personal and subject matter jurisdiction. All appeals have been exhausted in the English forum, so that judgment on the merits is final. The parties before this court are identical. Finally, all of Hunt's claims in this action derive from the same nucleus of operative fact dealt with in the course of seven years by four English judicial bodies.[13] Indeed, the monetary recovery sought by Hunt here is precisely that sum which BP received from him after the House of Lords dismissed his appeal. The strong policy that litigation must come to an end, which finds expression both in finality of judgments and *res judicata*, compels the conclusion that the English judgment should not be disturbed.

Hunt argues several other matters which he says preclude summary judgment, even though they have been decided against him by *Hunt I* or the English judgment. The law of the case established by *Hunt I*, as well as the *res judicata* effect of the English judgment, prevent reconsideration of these matters on the merits.

BP is therefore entitled to judgment as a matter of law. Hunt's prayer for relief is **DENIED** in all respects and BP's motion for summary judgment is **GRANTED**.

---

**13.** An initial proceeding which established jurisdiction and choice of laws was followed by trial on the merits, an appeal to the Court of Appeal, and ultimately an appeal to the Appellate Committee of the House of Lords.