[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14768
_____

D.C. Docket No. 8:10-cv-02232-SCB-TGW

MELISSA WIGFALL,
CONNIE DANIELS,
GENETHEL DANIELLE PYE,
ANTHONY MILLS,
MALISA BUTLER,
VIRGINIA LARRY,
MELISSA WORLEY,

Plaintiffs - Appellants,

MARK FLANDERS, et al.,

Plaintiffs,

versus

SODEXO, INC., et al.,

Defendants,

SAINT LEO UNIVERSITY, INCORPORATED,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 23, 2013)

Before BARKETT, MARCUS and HILL, Circuit Judges.

PER CURIAM:

Melissa Wigfall, Connie Daniels, Genethel Danielle Pye, Anthony Mills, Virginia Larry, Melissa Worley, and Malisa Butler (collectively "Plaintiffs") appeal the district court's award to defendant, Saint Leo University ("St. Leo"), of attorneys' fees in the amount of $181,216.50, pursuant to Title VII of the Civil Rights Act of 1964.[1]  St. Leo's claim for attorneys' fees arises out of an employment discrimination lawsuit brought by the Plaintiffs, through legal counsel, under the Florida Whistleblower Act, the Florida Civil Rights Act, the Fair Labor Standards Act, 42 U.S.C. § 1981, and Title VII, against St. Leo for race discrimination and retaliation.  The Plaintiffs, all former food-services workers located at St. Leo's campus, alleged that St. Leo cancelled its contract with Sodexo, the company with which St. Leo previously contracted to provide all of its campus food-services and which employed the Plaintiffs, in retaliation for the Plaintiffs' participation in an earlier employment discrimination lawsuit against

_____

[1] The district court also awarded St. Leo's its costs in the amount of $10,314.27, which the Plaintiffs have not appealed.

2

Sodexo ("Sodexo Lawsuit").  As a result of St. Leo's termination of its food-services contract with Sodexo, the Plaintiffs lost their food-services jobs at St. Leo.

The district court, on St. Leo's motion for judgment on the pleadings, dismissed the Plaintiffs' race discrimination claims, concluding that the Plaintiffs had previously asserted in the Sodexo Lawsuit and settled, with prejudice, the same discrimination claims as were now being asserted in their suit against Saint Leo.  The district court reasoned that under the Plaintiffs' theory that St. Leo and Sodexo were their joint employers they could have included St. Leo as a defendant in the Sodexo Lawsuit, they had a full and fair opportunity to litigate all of the issues of race discrimination in the Sodexo Lawsuit, and moreover, the Sodexo Settlement precluded future litigation against St. Leo on these settled claims.  The district court, however, permitted the Plaintiffs to proceed against St. Leo on one claim only—the retaliatory termination claim, noting that it was unclear, at the time of its dismissal order, whether St. Leo was the Plaintiffs' joint employer for the purposes of a valid retaliation claim.

Following discovery, St. Leo moved for summary judgment on the retaliatory termination claim, which the district court granted.  On review, another panel of this Court, assuming, without deciding, that St. Leo was the Plaintiffs' joint employer and that the Plaintiffs could establish a prima facie case of retaliation, affirmed summary judgment because St. Leo offered legitimate reasons

3

for its termination of the contract with Sodexo, which the Plaintiffs failed to show were pretextual.  Wigfall v. Saint Leo Univ., Inc., 517 F. App'x 910 (11th Cir. 2013) ("Wigfall I").

St. Leo, as the prevailing defendant, also moved for attorneys' fees pursuant to the standard set forth by the Supreme Court in Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), which the district court granted in the amount of $181,216.50.  Although it is the general rule that parties are responsible for their own attorneys' fees, Congress has provided exceptions through select statutory provisions, which in some instances permit only a prevailing plaintiff to recover fees and in other instances, including under Title VII, permit either the prevailing plaintiff or defendant to recover such fees.  Christiansburg, 434 U.S. at 415–16.  Under the Christiansburg standard, a prevailing defendant in a Title VII case may be granted attorneys' fees in the discretion of the district court "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  434 U.S. at 421.  The Court, however, cautioned that

> it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

Id. at 421–22.

4

In applying the <u>Christiansburg</u> standard, we have explained that the focus in awarding a prevailing defendant attorneys' fees is whether a plaintiff's claim "is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." <u>Sullivan v. Sch. Bd. of Pinellas Cnty.</u>, 773 F.2d 1182, 1189 (11th Cir. 1985) (quoting <u>Jones v. Texas Tech Univ.</u>, 656 F.2d 1137, 1145 (5th Cir. 1981)). Factors to consider include whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the case went through a full-blown trial. <u>Id.</u> at 1189. In the analysis, these factors, however, are "general guidelines only, not hard and fast rules[,]" and courts must evaluate a request for prevailing defendant attorneys' fees on a case-by-case basis. <u>Id.</u>

Here, the district court held the individual Plaintiffs jointly and severally liable for St. Leo's attorneys' fees for the entirety of the litigation, including all of the discrimination claims that were dismissed on St. Leo's motion for judgment on the pleadings and the sole retaliatory termination claim for which St. Leo was granted summary judgment. Although we agree that the district court exercised appropriate discretion in awarding attorneys' fees for the discrimination claims that were dismissed on St. Leo's motion for judgment on the pleadings, we cannot say that the Plaintiffs' retaliatory termination claim was "so lacking in arguable merit as to be groundless or without foundation." <u>Sullivan</u>, 773 F.2d at 1189. <u>See also</u>

5

Quintana v. Jenne, 414 F.3d 1306, 1311–12 (11th Cir. 2005) (holding that attorneys' fees may be apportioned and awarded for a frivolous claim while not being awarded for a separate non-frivolous claim, although both part of the same lawsuit).

The Plaintiffs' retaliatory termination claim was premised on its theory that Sodexo and St. Leo were joint employers of the food services workers and that St. Leo cancelled its contract with Sodexo, which resulted in the Plaintiffs' terminations, to retaliate against the Plaintiffs who participated in the Sodexo Lawsuit.[2]   It is undisputed that Plaintiffs' participation in the Sodexo Lawsuit was protected activity, and that Plaintiffs' termination was a materially adverse action. Thus, whether that materially adverse action was an action by Plaintiffs' employer depended on the Plaintiff's ability to establish that St. Leo was their joint employer with Sodexo.  Although the district court, at the summary judgment stage, determined that St. Leo was not a joint employer of the Plaintiffs, we cannot say that the Plaintiffs' belief otherwise was so weak as to make it frivolous for them to argue that this presented a triable issue of fact.  See, e.g., Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (concluding that a claim that "was

---

[2] The Plaintiffs also alleged that St. Leo was unhappy with Sodexo, which did not inform St. Leo that it had been sued for employment discrimination, and also with the terms of the Sodexo Lawsuit Settlement, which called for the replacement of Sodexo's Manager, Rich Vogel, who was highly regarded by the students at St. Leo.  St. Leo ultimately hired Vogel to work for the university as its in-house Director of Dining Services when it cancelled the Sodexo food-services contract.

6

exceedingly weak," involved "pure conjecture," and "speculation" was not "so unreasonable that it [could have been] termed frivolous"). As we noted, *supra*, at the time the district court dismissed all of the Plaintiffs' other discrimination claims and allowed their retaliatory discrimination claim to proceed, the district court noted that it was unclear whether St. Leo was the Plaintiffs' joint employer for the purposes of a valid retaliation claim.

Although not sufficient to eventually preclude the grant of summary judgment, there is some evidence in this record that makes the Plaintiffs' claim that St. Leo was its joint employer not so unreasonable as to render it frivolous.[3] First, the Plaintiffs worked solely on-site at St. Leo's campus, some of them having worked for St. Leo long before Sodexo had been awarded the food-services contract. Second, certain provisions of the Management Agreement between St. Leo and Sodexo indicate that St. Leo had the authority to control some of the decisions pertaining to the employment of the food-services workers. In particular, the Agreement provides that Sodexo was Saint Leo's agent

> in the management of the Food Service operation. [Sodexo] shall
> purchase food and supplies in [Sodexo's] name and shall pay the

---

[3] Factors which this Court has considered in determining an employer-employee relationship include: "(1) whether or not the employment took place on the premises of the alleged employer; (2) how much control the alleged employer exerted on the employees; and (3) whether or not the alleged employer had the power to fire, hire, or modify the employment condition of the employees." Morrison v. Magic Carpet Aviation, 383 F.3d 1253, 1255 (11th Cir. 2004); see also Wirtz v. Lone Star Steel Co., 405 F.2d 668, 669 (5th Cir. 1968) (explaining that each case must be considered in light of the total situation).

invoices. <u>As principal, [Saint Leo] may supervise [Sodexo's] daily operation of the Food Service operations, including</u> dining formats and programs, <u>working conditions for Food Services employees</u> and safety, sanitation and maintenance of the Premises. (Management Agreement ¶ 1.2) (Emphasis added).

The Agreement elsewhere provides that

All non-management Food Service Employees shall be [Sodexo] employees. . . . <u>[Sodexo] shall not, without [Saint Leo's] prior approval, make any substantial change in wages, fringe benefits or working conditions of non-management Food Service employees</u>. . . (Id. ¶ 4.2) (Emphasis added).

Under both of these provisions, St. Leo retained ultimate authority to control basic employment decisions, such as working conditions, wages and benefits of the food-services workers.

Third, even though Rich Vogel was Sodexo's on-site manager for the St. Leo food-services contract, the students at St. Leo apparently believed him to be an employee of St. Leo as they voted him Employee of the Year at St. Leo for two of the three years prior to this suit.  Fourth, all of the food services workers were required to wear uniforms and identification badges that indicated they were an employee of St. Leo, were required to attend Saint Leo's employee orientations, and received some instructions directly from Saint Leo officials concerning Dining Services and catering events on campus.

8

Given this evidence,[4] we cannot say that the Plaintiffs' retaliatory termination claim, which was dependent on the theory that St. Leo was a joint employer with Sodexo, was "frivolous, unreasonable, or without foundation" under the <u>Christiansburg</u> standard, and thus, it was an abuse of discretion for the district court to award attorneys' fees on the retaliatory termination claim.

Accordingly, we vacate the attorneys' fees award of $181,216.50, and upon remand, direct the district court to determine the portion of the attorneys' fees to attribute to St. Leo's defense against the Plaintiffs' discrimination claims which were dismissed on St. Leo's motion for judgment on the pleadings.

**AFFIRMED, in part, REVERSED and VACATED, in part, and REMANDED.**

---

[4] We also note as persuasive to our decision that the Plaintiffs' theory of St. Leo as its joint employer is not so unreasonable as to make it frivolous, a prior panel of this Court in <u>Wigfall I</u> affirmed the summary judgment on the merits of the Plaintiffs' retaliatory termination claim <u>not</u> on the question of St. Leo's status as a joint employer, but instead assumed, without deciding, this fact to be established for the Plaintiffs' prima facie case.

9