BYE, Circuit Judge.
Audio Odyssey and its owners brought a variety of claims under 42 U.S.C. § 1983 and state law against Brenton First National Bank, the Bank’s attorney and law firm, the Bank’s bonding company, various Scott County officials, and a loan officer of the Small Business Administration (SBA). The claims sought redress for the defendants’ mishandled execution of an ex parte writ of replevin authorizing the seizure of Audio Odyssey’s inventory, fixtures, accounts, furniture, equipment and machinery.
The district court dismissed the owners’ individual claims for lack of standing as well as Audio Odyssey’s § 1983 claim against the SBA loan officer. The district court later granted summary judgment to the defendants on all federal claims and subsequently dismissed the remaining state law claims under 28 U.S.C. § 1367(c).
Audio Odyssey and its owners perfected an appeal from the district court’s multiple adverse rulings. A divided panel of our court affirmed in part, reversed in part, and remanded for further proceedings. Audio Odyssey, Ltd. v. Brenton First Nat’l Bank, 245 F.3d 721 (8th Cir.2001). We granted rehearing en banc, vacated the panel opinion, and heard additional arguments. Having considered the many issues raised by the parties’ suggestions for panel rehearing and rehearing en banc, we now reinstate the panel opinion in full.
The panel opinion addresses the full array of issues presented in this appeal in considerable detail. We cannot improve upon that opinion’s discussion, but we do feel obliged to respond briefly to the thoughtful dissenting opinion, which now offers three arguments suggesting the absence of any Fourth Amendment violations.
First, the dissent states “it was constitutionally reasonable for the sheriffs to construe the writ as authorizing them to close the store for a reasonable period while the replevied property was inventoried and removed.” Post at 503. While true, this statement does not go far enough. Tabulating and removing Audio Odyssey’s personalty undoubtedly took time. Had the Bank and the sheriff moved expeditiously to inventory and remove Audio Odyssey’s property while the store was closed, a Fourth Amendment claim would surely fail. But that is not what transpired. The Bank was unprepared to cart away Audio Odyssey’s personalty on Friday, July 14, or even Monday, July 17 — despite the sheriffs requirements to this effect. Instead, the Bank and the sheriff dallied until the middle of that week even to commence their inventorying. During that period, the defendants unreasonably deprived Audio Odyssey of its leasehold estate. Audio Odyssey was entitled to possess the store premises even though it was not entitled to some of its personalty. And Audio Odyssey’s interest was hardly *501 ephemeral. Among other aspects of its business, it operated a service center and repair department. It serviced warranty claims and received consignments of other electronic equipment owned by consumers for resale in which the Bank had no financial or security interest whatsoever. Beyond that, there were product lines (Sony, for example) located upon the premises also held for resale in which the Bank did not own a security interest and to which the replevin order did not apply.
The value of being allowed to continue in business without the inventory financed by the bank at its disposal may not have been conceptualized in its business plan as initially intended, however, there remained a legitimate business interest in continuing viable operations after the replevin action ran its course pursuant to the court order. While such value may not have been substantial, Audio Odyssey is nevertheless entitled to the consideration of damages, even if nominal (and the retention of its supplemental state law claims in the district court) for the constitutional violation.
Second, the dissent relies on a three-party lease assignment only partially executed by Audio Odyssey and the Bank, but not the landlord: “the lease assignment forecloses Audio Odyssey’s claim that the initial entry violated its Fourth Amendment rights.” Post at 504. Assuming dubitcmte that the lease assignment is valid in the first place, we fail to understand how the dissent’s argument furthers the analysis. The panel opinion did not hold, nor do we, that the initial entry alone violated the Fourth Amendment. To the extent the lease assignment may be read to permit the Bank to take possession of the store premises in order to remove or sell the personalty, this right would not extend further than the writ of replevin the Bank actually obtained and executed. And even if the lease assignment permitted the Bank to transfer possessory interest to another party, the facts of this case reveal the Bank never took such action. Thus, the arguments advanced above explain adequately why the defendants’ seizure under that writ was constitutionally impermissible.
Third, the dissent appears to argue the defendants did not violate the Fourth Amendment because Audio Odyssey bears some measure of blame for making no attempt to seek judicial relief to reacquire the store property. ' Post at 504-05. • We do not believe the record fully supports this characterization of Audio Odyssey’s conduct after the seizure was accomplished. In any event, Audio Odyssey’s delay — if such it was — may well reflect its minimal damages. Perhaps its owner did not act more quickly because little could be done to salvage the business’s good name and capital investment. But this point would do nothing to vitiate an underlying Fourth Amendment violation. Defendants who violate the Fourth Amendment must be held accountable for their actions, even if the ultimate measure of damages assessed seems hardly to justify the time and expense of litigation. A failure to mitigate damages is not an affirmative defense to a constitutional tort. And it is not the law that state actors may violate the constitutional rights of others, yet avoid liability for their actions simply because the injured victim does not suffer very much.