[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11597
_____

D.C. Docket No. 3:11-cv-00542-MW-CJK


MATTHEW JAMES WILLINGHAM,

Plaintiff-Appellee,

versus

CITY OF VALPARAISO FLORIDA,
A Florida Municipal Corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 20, 2016)

Before HULL and JILL PRYOR, Circuit Judges, and ROYAL,[*] District Judge.

PER CURIAM:

_____

[*]Honorable C. Ashley Royal, United States District Judge for the Middle District of
Georgia, sitting by designation.

After a jury trial, Defendant City of Valparaiso, Florida (the "City") appeals the district court's denial of both the City's motion for summary judgment as well as its renewed motions for judgment as a matter of law as to Plaintiff Matthew James Willingham's suit against the City under 42 U.S.C. § 1983.  Plaintiff Willingham was a captain of the City's police department.  The jury found that Willingham as a private citizen made certain comments before a City Commission meeting on October 12, 2009, and that this constitutionally protected speech was a motivating factor in Mayor J. Bruce Arnold's decision to terminate Willingham's employment two weeks later.

After reviewing the parties' briefs and the extensive record, and after the benefit of oral argument, we affirm the district court's ruling and the judgment in favor of Plaintiff Willingham against the City.

## I.    PROCEDURAL HISTORY

Willingham's original complaint against the City alleged various equal protection, procedural due process, and First Amendment rights violations under 42 U.S.C. § 1983.  The district court granted the City's motion to dismiss Willingham's equal protection and procedural due process counts regarding Mayor Arnold's decision to terminate Willingham, but denied the City's motion as to Willingham's First Amendment claim.

2

Eventually, Willingham filed an amended complaint alleging that on October 12, 2009, he spoke as a private citizen before the City Commission on a matter of public concern where he disagreed with Mayor Arnold publically over a proposed city code enforcement policy. Willingham criticized the policy's "selective enforcement" nature, and he complained of its negative effect on his own private business, Willingham Seafood. Willingham's amended complaint alleged that in retaliation against Willingham for his public comments, Mayor Arnold then terminated Willingham's employment with the City, in violation of the First Amendment. As early as October 14, 2009, only two days after Willingham's October 12 comments, Mayor Arnold placed Willingham on administrative leave and indicated he was considering terminating Willingham. Mayor Arnold terminated Willingham on October 28, 2009.

After Willingham filed his amended complaint, the City filed a motion for summary judgment, which the district court granted in part, denied in part, and took under advisement in part.

The case was tried before a jury, and Willingham argued two theories of liability under the First Amendment: (1) he was terminated for engaging in constitutionally protected speech; and (2) he was terminated because of his political associations. At the close of Willingham's case in chief, the City moved for a directed verdict. The district court denied the motion in part and took it under

3

advisement in part. At the close of evidence, the City renewed its motion, and the district court denied it.

The jury found that Willingham spoke before the City Commission, and that this protected speech was a motivating factor in Mayor Arnold's decision to terminate Willingham's employment. The jury further found that Mayor Arnold would not have terminated Willingham's employment if he had not taken Willingham's protected speech into account. The jury also found in Willingham's favor on his First Amendment political association claim. The jury awarded Willingham $450,000 in damages, and after trial, the district court awarded Willingham $420,000 in attorney's fees and $70,548 in front pay as equitable relief.

Post-trial, the City filed multiple renewed motions for summary judgment and renewed motions for judgment as a matter of law. As to the City's renewed motions for summary judgment, the district court denied these motions as untimely and procedurally improper, but deemed the City's legal arguments to be incorporated into their renewed motions for judgment as a matter of law. In the City's latter motions, the City moved to set aside the verdict on the basis that Mayor Arnold did not exercise final policymaking authority over the decision to terminate Willingham, that Willingham did not engage in constitutionally protected speech, and that the jury's verdict as to Willingham's political

4

association claim was not supported by legally sufficient evidence. The City, however, did not challenge the sufficiency of the evidence supporting the jury's verdict as to Willingham's free speech claim.

The district court granted the City's motions as to Willingham's political association claim, but denied them as to his free speech claim. Willingham v. City of Valparaiso, 97 F. Supp. 3d 1345, 1361 (N.D. Fla. 2015). The district court concluded the evidence showed that Mayor Arnold did exercise final policymaking authority over the decision to terminate Willingham and that Willingham did engage in constitutionally protected speech. Id. at 1356, 1358. The district court noted that the City had failed to timely challenge the sufficiency of the evidence as to Willingham's free speech claim, but nevertheless addressed whether legally sufficient evidence supported the jury's verdict "out of an abundance of caution." Id. at 1351 n.7, 1358-59. The district court found that the verdict was so supported. Id. at 1359.

## II.    ISSUES ON APPEAL

On appeal, the City attempts to challenge the district court's orders on the City's (1) pre-trial motions for summary judgment and (2) post-trial renewed motions for judgement as a matter of law.[1] As to all orders, the City argues

---

[1]We review the district court's conclusions of law de novo, whether in an order on a motion for summary judgment or on a motion for judgment as a matter of law. See Salvato v. Miley, 790 F.3d 1286, 1292 (11th Cir. 2015). As to a jury's verdict, we review the denial of a

5

(1) under Monell's[2] precedents, Mayor Arnold did not exercise final policymaking authority over Arnold's decision to terminate Willingham; (2) Willingham's comments before the October 12, 2009 City Commission meeting were not constitutionally protected speech; and (3) the City is entitled to a complete defense because Mayor Arnold still would have terminated Willingham even absent Willingham's October 12 speech.[3]  We conclude all of these claims are without merit.

## A.    Final Policymaking Authority

First, as to whether Mayor Arnold exercised final policymaking authority on behalf of the City over his decision to terminate Willingham, we find no reversible error in the district court's factual findings or legal conclusions.

While municipalities cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior, nevertheless, they may be held liable for the execution of a governmental policy or custom.  See Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36 (1978).  "Municipal

---

motion for judgment as a matter of law de novo applying the same standards used by the district court.  See Abel v. Dubberly, 210 F.3d 1334, 1337 (11th Cir. 2000).  We look at the evidence in the light most favorable to Plaintiff Willingham.  See Campbell v. Rainbow City, 434 F.3d 1306, 1312 (11th Cir. 2006).

[2]Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 98 S. Ct. 2018 (1978).

[3]The City does not appeal the amount of damages awarded by the jury or the reasonableness of the attorney's fees or front pay award by the district court.  Rather, on appeal, the City argues that it has no liability at all for anything.

liability may arise with regards to an employment decision, such as a termination, provided that the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Quinn v. Monroe Cty., 330 F.3d 1320, 1325 (11th Cir. 2003) (quotation marks and emphasis omitted). And "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298 (1986); see also Cooper v. Dillon, 403 F.3d 1208, 1223 (11th Cir. 2005) (finding that a municipal official exercised final policymaking authority over a single enforcement decision). But while a municipality's legislative body, such as a City Commission, will often wield the "power to establish policy" that matters for Monell purposes, "Monell's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy.'" Pembaur, 475 U.S. at 480, 106 S. Ct. at 1298-99 (quoting Monell, 436 U.S. at 694, 98 S. Ct. at 2037-38).

Further, the "Eleventh Circuit has interpreted Monell's policy or custom requirement to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." Quinn, 330 F.3d at 1325 (quotation marks omitted). Accordingly, "[f]inal policymaking authority over a particular subject area does not vest in an official

7

whose decisions in the area are subject to meaningful administrative review."
Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997).  Conversely,
final policymaking authority may vest in an official whose decisions in an area are
not subject to meaningful administrative review.  See Holloman ex rel. Holloman
v. Harland, 370 F.3d 1252, 1292-93 (11th Cir. 2004).

In this case, the evidence overwhelmingly showed that Mayor Arnold's
decision to terminate Willingham was not subject to any meaningful administrative
review.  The City asserts, and Willingham does not contest, that the City Charter
gave the City Commission the legal power to hear Willingham's termination
appeal of Mayor Arnold's termination decision and to overrule that termination
decision.  We normally place great weight on sources of "state and local positive
law," such as a City Charter, which typically create mechanisms of review over
those decisions.  See id. at 1292 (quotation marks omitted).  When such review
procedures are in place, we have often found that the subordinate official does not
exercise final policymaking authority.  See, e.g., Quinn, 330 F.3d at 1326; Scala,
116 F.3d at 1402; Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 637-38 (11th
Cir. 1991).

But a finding that review procedures are "theoretically available on paper"
does not end the inquiry when a terminated public employee "could not, as a
practical matter, take advantage of it."  See Holloman, 370 F.3d at 1293.  That is

8

true where, as here, Mayor Arnold, who made the termination decision, effectively prevented meaningful review.

As the district court's order aptly explains, Mayor Arnold "sabotaged the entire process" of review over his own decision to terminate Willingham. Willingham, 97 F. Supp. 3d at 1354. For example, one commissioner moved to reinstate Willingham in an effort to overrule Mayor Arnold's termination decision, and at least one other commissioner seconded the motion. Then, Mayor Arnold, "undeterred, refused to call a vote, closed discussion and moved to the next agenda item." Id. Since Mayor Arnold was Chairman of the City Commission and controlled its agenda, the other Commission members—and therefore the Commission as a whole—were unable to force Mayor Arnold to even entertain their motions as to Mr. Willingham. See id. at 1354-55.

In an effort to argue that the City Commission did retain meaningful administrative review over Mayor Arnold's termination decision, the City contends that Commissioner Smith's motion to reinstate Willingham was legal, but that "the City Attorney advised Mayor Arnold that Commissioner Smith had made an 'illegal motion' and that it would be improper to call an illegal motion for a vote." The City reasons that, "[i]n essence, the district court is improperly attempting to hold the City vicariously liable for Mayor Arnold's decision to follow the advice of the City Attorney in this instance."

9

Given the compelling record evidence in this case, we reject this argument. The residents of the City of Valparaiso elected Mr. Arnold as their mayor. Indeed, to date, Arnold has continued to serve as mayor of this Florida town of 6,000 residents for well over 50 years. The evidence of the Commission meeting shows that Mayor Arnold himself ran the meeting and that, as to this particular matter, he only ostensibly consulted the city attorney as to a decision he had already made.[4] His soliciting the city attorney's off-the-cuff advice does not change the fact that Mayor Arnold alone was solely responsible for his official acts as Chairman of the Commission and that Mayor Arnold himself made all decisions in this case. The City argues that "the City's review policy could not be altered by the inaccurate opinion of a City Attorney or by any single member of the City Commission, including Mayor Arnold, by simply ignoring the existing policy." But that is exactly what Mayor Arnold did. He ignored both the City Charter's provisions governing review of Willingham's termination, and he ignored his fellow commissioners' legal motions to overrule that termination decision.

While the road Willingham followed in appealing his termination should have reached the City Commission's review, instead, Mayor Arnold obstructed the path on both sides. As Chairman of the City Commission, Mayor Arnold's

---

[4]By the way, on appeal, the City has not articulated a reason why the motion was illegal, but rather switches focus to arguing Mayor Arnold merely misapplied the procedures in refusing to hear the commissioners' motion. But the record evidence sufficiently shows Mayor Arnold's ruling the motion out of order was only a smokescreen to keep the Commission from reviewing Arnold's termination decision.

conduct effectively nullified the Charter's very procedures designed to review Arnold's termination decision.  "Monell is a case about responsibility," and municipalities may be held responsible when their officials exercise final policymaking authority in a way that violates citizens' constitutional rights.  See Pembaur, 475 U.S. at 478, 481, 483, 106 S. Ct. at 1297, 1299-1300.  In this case, the City of Valparaiso is responsible for a million dollar judgment because Mayor Arnold singularly controlled, made, and implemented all decisions by the City as to Plaintiff Willingham, and then prevented meaningful administrative review.  Thus, Mayor Arnold exercised final policymaking authority over his decision to terminate Willingham, and the manner in which he did so violated Willingham's constitutional rights.

**B.    Constitutionally Protected Speech**

Second, as to whether Willingham's October 12 comments were constitutionally protected speech, given our precedents cited in the district court's thorough orders, we likewise can find no reversible error in the district court's factual findings or legal conclusions.

**C.    City's Affirmative Defense**

Third, as to whether the City is shielded from liability by an affirmative defense on the basis that Mayor Arnold still would have terminated Willingham even absent Willingham's October 12 speech, we find this issue not properly

11

before this Court at this time.  The City challenges the district court's summary judgment ruling that the City was not entitled to prevail as a matter of law as to the City's affirmative defense and that instead a triable fact issue existed on that defense.  That challenge fails because "a party may not appeal an order denying summary judgment after there has been a full trial on the merits."  Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC, 684 F.3d 1211, 1219 (11th Cir. 2012).  In any event, the district court did not err in that ruling.

To the extent the City challenges the sufficiency of the evidence supporting the jury's verdict, which found that Mayor Arnold would not have made the same termination decision absent Willingham's speech, this challenge is not properly before us.  In the absence of a party's post-verdict motion under Fed. R. Civ. P. 50(b) challenging the sufficiency of the evidence, "an appellate court is without power to direct the District Court to enter judgment contrary to the one it had permitted to stand."  Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 400-01, 126 S. Ct. 980, 985 (2006) (quotation marks and alterations omitted).  In its order on the City's renewed motions for judgment as a matter of law, the district court noted that "the City [had] not renewed a sufficiency of the evidence argument as to Mr. Willingham's free speech claim."  Willingham, 97 F. Supp. 3d at 1351 n.7 (quotation marks omitted).

12

Alternatively, we conclude the evidence amply supported the jury's verdict in every regard and the district court did not err in any of its rulings in this case.

**AFFIRMED**.